605 So.2d 120 (1992)
FLORIDA DEPARTMENT OF TRANSPORTATION, Appellant/Cross Appellee,
v.
DARDASHTI PROPERTIES, and Conrad Schaefer, etc., et al., Appellees/Cross Appellants.
No. 91-1221.
District Court of Appeal of Florida, Fourth District.
August 19, 1992.
Rehearing, Rehearing and Certification Denied October 23, 1992.
*121 Thornton J. Williams, Gen. Counsel, and Gregory G. Costas, Asst. Gen. Counsel, Tallahassee, for appellant/cross appellee.
William R.H. Broome of Broome, Kelley & Aldrich, P.A., West Palm Beach, for appellee/cross appellant-Dardashti.
Jeffrey M. Bell of Sherman, Waldman, Bell & Ritter, P.A., Boca Raton, for appellee/cross appellant-Schaefer.
Edwin G. Drake, Singer Island, for appellee/cross appellant-Polzin Housing Corp.
Rehearing, Rehearing En Banc and Certification Denied October 23, 1992.
PER CURIAM.
Appellant Florida Department of Transportation [FDOT] appeals the final judgment which quieted title in appellee Dardashti Properties, Inc. [Dardashti]. We affirm.[1]
Dardashti filed a complaint that, inter alia, sought to quiet title to an eleven foot strip of land in Palm Beach County near the Florida Turnpike along the south shoulder of Okeechobee Road. The disputed title evolved as follows. In 1917, the Model Land Company [Model Land] conveyed a "right of way and easement in and over" the north fifty feet of section 26 by recorded deed to Palm Beach County [County] for use as a public highway.[2] The deed also provided that if the land ceased to be used as a public highway, it would revert to Model Land or its successors. In 1953, parties named Hamilton conveyed land by recorded deed to parties named Polzin.[3] The Hamilton to Polzin conveyance included the southerly eleven feet of the County's fifty foot parcel. In 1956, the County recorded a "Right of Way Map" that showed a right-of-way only over the north thirty-nine feet of the County's fifty foot parcel and adopted a road plat that showed the same thing. Also in 1956, the County conveyed the thirty-nine feet by recorded *122 deed to the State Road Department. In 1965, the Polzins conveyed their land including the eleven foot strip by recorded deed to appellee Polzin Housing Corporation [Polzin Housing]. In 1975, Polzin Housing conveyed its land including the eleven foot strip by recorded deed to appellee Conrad Schaefer [Schaefer]. He constructed a small shopping center that has a parking lot which covers part of the eleven foot strip. Although the County twice approved building permits and site plans and issued certificates of occupancy for the multi-phased project, it never advised Schaefer as to its then-exiting claim to the eleven foot strip.[4] Each year Schaefer paid the real property taxes that the County levied on the eleven foot strip. In 1979, Schaefer conveyed his land including the eleven foot strip by a recorded warranty deed to Dardashti, who has continued to pay the real property taxes for the eleven foot strip. In 1989, the County conveyed the fifty foot parcel by recorded deed to FDOT, which later constructed road improvements over the eleven foot strip.[5]
At the conclusion of a non-jury trial, Judge Carlisle found that FDOT's claim to the eleven foot strip was "extinguished by virtue of the operation of Florida Statutes Chapter 712." He also found that FDOT's claim did "not fall within any exceptions to marketability provided for in F.S. 712.03." Judge Fine had earlier noted, when he heard and denied FDOT's motion for summary judgment, that subsections (1), (2), and (4) of section 712.03 all included the term "estates," but, by contrast, subsection (5) did not include that term. Thus, it appears that both trial judges reasoned that subsection (5) did not apply to a right-of-way in fee.
As did Judge Carlisle, we hold that the 1917 deed did not create an easement or right-of-way. Although the 1917 deed labeled the fifty foot parcel as a "right of way and easement," those words merely described the purpose for the conveyance. See Robb v. Atlantic Coast Line R.R. Co., 117 So.2d 534, 537 (Fla. 2d DCA 1960) ("fee [title] will pass by deed containing a clause or recital which is merely declaratory of the use contemplated of the land."). Although the 1917 deed provided that the land would revert if not used as a public highway, that provision merely created a covenant of the deed. Id. at 535-36. Whatever one chooses to call it, an ownership interest, a right-of-way in fee, or a determinable fee interest, we hold that the County received fee title to the fifty foot parcel.
Chapter 712 of the Florida Statutes is commonly referred to as the Marketable Record Titles Act [MRTA]. As stated in City of Jacksonville v. Horn, 496 So.2d 204, 206 (Fla. 1st DCA 1986):
The purpose of the MRTA is to simplify and facilitate land title transactions. It eliminates all stale claims to real estate, with certain enumerated exceptions, unless notice of these claims is filed in a procedurally proper manner. [Citation omitted.] More specifically, the [MRTA] provides that any person who, along with his predecessors, "... has been vested with any estate in land of record for 30 years or more, shall have a marketable title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s. 712.03."
Section 712.03 lists the rights that the MRTA "shall not affect or extinguish." Subsection (5), in pertinent part, provides:
Recorded or unrecorded easements or rights, interest or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof....
*123 Because the County did not have an easement or right-of-way over the fifty foot parcel, section 712.03(5) would not apply.[6]
The trial court also found that FDOT was "estopped to assert its claim to any right, title or interest in said eleven (11) foot strip" because (1) the county's road plat only showed a right-of-way over the north thirty-nine feet of the fifty foot parcel; (2) Palm Beach County failed to assert any claim to the eleven foot strip when it approved permits and certificates for the construction of the shopping center and parking lot; (3) Schaefer and Dardashti paid the real property taxes levied on the eleven foot strip; and (4) Schaefer and Dardashti relied to their detriment on the failure of FDOT and Palm Beach County to assert their claim to the eleven foot strip.
We affirm the trial court's finding that FDOT was estopped to assert its claim. Because Dardashti's action to quiet title sought to defend its apparent title, the doctrine of estoppel was available to it. See Bryant v. Peppe, 238 So.2d 836 (Fla. 1970) (estoppel only available to defend apparent title, not to establish it). The essential elements of the doctrine of estoppel are: (1) a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the conditions of affairs later asserted by the estopped party; (2) a reliance upon the representation by the party claiming the estoppel; and (3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon. First Southern Ins. Co. v. Ocean State Bank, 562 So.2d 798, 800 (Fla. 1st DCA 1990). We agree that the County made material representations contrary to the claim that FDOT now asserts as to the eleven foot strip. Because the County was FDOT's predecessor in title, FDOT was bound by those representations, I.I.F. v. Claughton, 86 So.2d 775 (Fla. 1956), to wit: the recording of the right-of-way map, the adoption of the road plat, the levy and collection of real property taxes, the approval of building permits and site plans, and the issuance of certificates of occupancy. Schaefer relied on the representations to his detriment when he utilized the eleven foot strip to design and construct the shopping center. Dardashti relied on Schaefer's ownership of the eleven foot strip to its detriment when it purchased the shopping center.
We find no merit to the remaining issues.
AFFIRMED.
HERSEY, J., and ALDERMAN, JAMES E., Senior Justice, concur.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting.
I respectfully disagree with both of the conclusions in the majority opinion. In my view, the government claim to the property is protected by the exception to the Marketable Record Title Act set out in section 712.03(5), and the law and the proof will not support an "estoppel" to divest the government of the property. The net result of our affirmance is that the government is being required to buy its own property in order to widen a roadway.
NOTES
[1] Because of our affirmance we need not address Dardashti's cross appeal of the trial court's finding that the grantor "did not breach the warranties contained in the warranty deed to [Dardashti]."
[2] This is FDOT's root of title, which the parties call an ownership interest, a right-of-way in fee, or a determinable fee interest.
[3] This is Dardashti's root of title.
[4] Also, the County never recorded notice of its claim to the eleven foot strip. § 712.05, Fla. Stat. (1989).
[5] It appears that the eleven foot strip has since been taken by FDOT and that the just compensation phase of Dardashti's condemnation action has been stayed pending conclusion of this appeal.
[6] On appeal, FDOT does not argue that another subsection applies.